UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

RECEIPT # 56883
AMOUNT $
SUMMONS ISSUED
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE

CRYSTAL MOTOR EXPRESS, INC., )
                             )
              Plaintiff,     )
v.                           )     CIVIL ACTION NO.
                             )
TOWN OF LYNNFIELD,           )
                             )
              Defendant.     )     04    11450 RGS

## COMPLAINT FOR DECLARATORY JUDGMENT

MAGISTRATE JUDGE _____

### I. Summary of Complaint and Relief Sought.

By its Complaint herein, the plaintiff, Crystal Motor Express, Inc. ("Crystal"), seeks a declaration from this Court, pursuant to 28 U.S.C. § 2201(a), as to its rights to use a 13.8 acre site ("site") owned by Crystal on Kimball Lane in the Town of Lynnfield ("Town") for certain business purposes. In 1999, Crystal received a permit from the Town to develop the site into a trucking terminal for use by Crystal in conducting its operations as an interstate motor carrier of property pursuant to operating authority issued to Crystal by the Federal Motor Carrier Safety Administration pursuant to 49 U.S.C. §13101, *et seq*. In reliance on that permit, Crystal expended substantial sums of money in the expectation of establishing a trucking terminal on the site. Furthermore, its future interstate motor carrier operations and business plan depend exclusively on using the site in such manner, as more fully described below.

Crystal, which has been in business for over 50 years, conducts its interstate trucking operations through the use of diesel fuel-powered tractor-trailer and straight trucks. In 1999, the Town, after public hearings, issued a special permit authorizing Crystal to develop land in the

Town for a trucking terminal knowing that Crystal's vehicles were diesel powered. Approximately four years later, however, the Town adopted a By-Law that purports to prevent operation of a trucking terminal at the site, by prohibiting "commercial, industrial or business property that involves in any way the burning or use of diesel fuel or involves the regular use and operation of vehicles using or burning diesel fuel . . . within a proximity of one thousand feet of a residential area." (See copy of By-Law, attached hereto as **Exhibit A**). The By-Law exempted existing uses, including a United Parcel Service trucking terminal which is located on the same street as the proposed Crystal terminal and which operates many diesel trucks on a 24-hour basis within 1000 feet of residences. The By-Law was offered by an aggrieved resident who unsuccessfully challenged Crystal's development proposal before the Town planning board and the DEP and who sued the Town in 1999 following its issuance of the special permit to Crystal.

By this Complaint, Crystal contends that the By-Law violates Crystal's rights guaranteed under the United States Constitution and is preempted by federal law, in that: (a) it is preempted by the Federal Surface Transportation Act and regulations promulgated in accordance therewith, 49 U.S.C. §§ 31111(e), 31114; 23 C.F.R. § 658.5, and by the provisions of the ICC Termination Act of 1995, 49 U.S.C. §14501(c); (b) it constitutes a violation of the dormant commerce clause, U.S. Const., Art. I, § 8, cl. 3; (c) it violates Crystal's due process rights, in that it is impermissibly vague and unreasonable, is arbitrary and capricious and, as applied to Crystal, would constitute reverse spot zoning; and, (d) it constitutes an unconstitutional taking without just compensation, in violation of Crystal's rights under the Fifth Amendment to the United States Constitution.

## II.   Parties, Jurisdiction and Venue.

1. Plaintiff, Crystal Motor Express, Inc. ("Crystal") is a Massachusetts corporation and maintains its office and principal place of business at 3 Melvin Street, Wakefield, Middlesex County, Massachusetts.

2. Defendant, Town of Lynnfield ("Town") is a municipal corporation located in Essex County in the Commonwealth of Massachusetts.

3. This action presents an actual case and controversy within the jurisdiction of this Court and is, therefore, authorized pursuant to 28 U.S.C. § 2201.

4. Federal question jurisdiction exists in that Crystal seeks to determine its rights under the Constitution and laws of the United States. U.S. Const., Art. III, § 2; 28 U.S.C. § 1331 and 42 U.S.C. § 1983. Federal question jurisdiction also exists pursuant to 28 U.S.C. §1337(a) in that Crystal claims this action arose under an Act of Congress regulating commerce, to wit: the ICC Termination Act of 1995, 49 U.S.C. §13101 ("ICCTA"), *et seq*. The plaintiff, therefore, calls upon this Court to interpret and declare the rights of the parties under federal law as a result of the actions taken by the Town.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) in that the defendant resides in this district and all or a substantial part of the events or omissions giving rise to this controversy occurred within this judicial district.

## III.   Background Facts.

6. Crystal is a family-owned and operated interstate motor carrier of property, duly licensed by the Federal Motor Carrier Safety Administration("FMCSA")[1] pursuant to 49 U.S.C. §13902. Crystal has been in the interstate transportation (trucking) business for more than 50

---

[1] The FMCSA is the successor regulatory agency to the former Interstate Commerce Commission and administers the ICCTA as to interstate motor carriers such as Crystal.

years. For the past 40 years, Crystal has operated from its principal place of business in Wakefield, Massachusetts. Crystal employs approximately 100 people.

7. Crystal performs overnight interstate freight transportation services throughout New England, New York, New Jersey, Pennsylvania, Delaware and parts of Virginia. Crystal also performs same day pick-ups and deliveries to Logan International Airport in Boston, Massachusetts. Crystal operates a fleet of over two hundred vehicles, including tractors and straight trucks, all of which are diesel-powered. In addition, Crystal operates approximately one hundred pieces of trailer equipment.

8. In 1979, Crystal built a truck terminal at 3 Melvin Street, Wakefield, MA, where it operates today (hereinafter "Wakefield Terminal").

9. Crystal's terminal location is critical to its operations. The Wakefield Terminal is less than 2½ miles from Interstate 95, which provides critical access to other major routes such as U.S. Route 1, Interstate 93, Interstate 90 (the Massachusetts Turnpike), and Interstate 495 as well as many state and local roads and highways. The majority of Crystal's customers are located within the Interstate 495 belt area, allowing Crystal to service them on an overnight basis to and from Logan International Airport and elsewhere throughout the northeast.

10. Crystal's largest single account - approximately 10 percent of its revenue - is generated from its warehouse operation, which is located 8 miles from the Wakefield Terminal.

11. Crystal maintains its own tire operation from which it supplies tires for and maintains its trucks. Crystal's trucks are inspected twice daily and tires replaced accordingly to insure safe operations. Crystal's tire operation is located at 465 Water Street in Wakefield, Massachusetts, less than one mile from its Wakefield Terminal.

12.    Crystal's Wakefield Terminal is located on a 3-acre site, and consists of 26 doors for loading and unloading of freight from and onto trailers, and 22,000 square feet of platform area.

13.    From 1992 to 2002, Crystal's business more than doubled. In fiscal year 1992, Crystal handled 62,672 shipments weighing 108,542,000 pounds. In fiscal year 2002, Crystal handled over 128,000 shipments of over 235,000,000 pounds.

14.    In order to properly serve its customers and handle their interstate shipments, Crystal requires more platform space than is currently available at its Wakefield Terminal. However, Crystal is unable to expand its Wakefield Terminal due to the lack of land at that location.

15.    Crystal's inadequate space at its Wakefield Terminal has caused lost and mis-delivered freight, the inability to deliver freight, an increase in customer claims against Crystal, safety concerns, and other operational and service inefficiencies that threaten and impair Crystal's ability to provide a reliable, efficient and competitive interstate motor carrier service.

16.    Crystal operates in a very competitive industry. There are at least fifteen motor carriers known to Crystal who perform the same services as Crystal within its same service area. Crystal has lost customers to these competitors over the last several years due to its inadequate space at its Wakefield Terminal.

17.    Beginning around 1992, Crystal began a lengthy and expensive process of locating a new terminal of adequate size, or in the alternative, adequate sites upon which to build a larger terminal to be able to properly serve its customers. Crystal contacted approximately 15 real estate brokers to assist it in that effort.

18.     Crystal was unable to locate land that would allow for a trucking terminal under existing zoning laws in the surrounding towns of Lynn, Chelsea, Revere, Salem, Peabody, Danvers, Tewksbury, Dracut, Wilmington and Woburn, Massachusetts.

19.     On or about November 23, 1998, Crystal, through its owner, Ronald Masiello, as trustee of Crystal Land Investment Trust, executed a Purchase and Sale Agreement (hereinafter "P&S") for a 13.8 acre site (hereinafter "Site") located on Kimball Lane in Lynnfield, Massachusetts. Crystal purchased the Site with the intention of constructing a new trucking terminal thereon, which would alleviate the above-described operational problems.

20.     The Site was formerly utilized as a horseracing track. The Site abuts a United Parcel Service (hereafter "UPS") facility. Upon information and belief, UPS operates over 100 gasoline and diesel powered trucks on a 24-hour per day basis and maintains fuel tanks at that facility.

21.     When the P&S was signed, Section 4.4(6) of the Town's Zoning By-Laws expressly permitted a "trucking terminal or motor freight station" to be located within the zone covering the Site. The Site would be approximately the same distance from Crystal's warehouse as its existing Wakefield terminal, and approximately the same amount of fuel would be burned to travel between them. Crystal's second largest account, which is located in Woburn, Massachusetts, is also approximately the same distance from the site as its present Wakefield Terminal, and Crystal's trucks would burn approximately the same amount of fuel to travel between them.

22.     In or about December 1998, Crystal applied to Lynnfield's Town Zoning Board of Appeals (hereinafter "ZBA") for a special permit to use the Site as a trucking terminal. In its application, Crystal informed the Town of the facts related to its use of the Site, including the

approximate number of diesel fuel trucks that would enter and exit the Site on a daily basis and the storage of diesel fuel at the Site.

23.  The ZBA conducted two public hearings on the application. At both of those public hearings, residents of the Town had an opportunity to raise issues concerning the impact that use of the Site as a trucking terminal might have on abutters, the environment, and neighborhoods.

24.  In or about January 1999, the Town Planning Board issued a written recommendation to the Town ZBA that Crystal's application be approved. (See Decision of Town Zoning Board of Appeal dated June 28, 1999 at p. 12, attached hereto as **Exhibit B**).

25.  In or about March 1999, Crystal recorded its site plan with the Town Planning Board under Mass. Gen. Laws Chapter 40A, § 6, and the Town Planning Board approved the plan on or about March 17, 1999. As a result, the Town ZBA determined that Crystal's application for special permit was to be determined under the Town By-Laws that existed at the time of the filing of the application, rather than any By-law that might subsequently be adopted by the Town. (See Exhibit B, p. 12).

26.  On or about April 6, 1999, following the two hearings, the ZBA approved Crystal's application and issued a special permit authorizing Crystal to use the Site for a truck terminal. (See Exhibit B). In issuing the special permit, the ZBA specifically found, *inter alia*, that:

   a. The Premises is located wholly within Commercial District of the Town of Lynnfield.

   b. A trucking terminal use is a permitted use in the Commercial District of the Town of Lynnfield.

   c. Crystal's rights to proceed with the proposal are protected under M.G.L. Chapter 40A, Section 6, by virtue of the action of the Lynnfield Planning Board on March 17, 1999 when it signed as an Approval Not Required Plan, the plan entitled "Plan of Land #10 Kimball Lane, Lynnfield, Mass.", Assessors Map 54 Parcel 2486, dated March 17, 1999 by Hayes Engineering, Inc.

d. Based on the location of the proposed building and activities, the distance from the nearest abutting residential properties in Lynnfield, the proposed activity of the Petitioner on the Premises, and the significant difference in topography between the commercial site and the adjoining residential sites, screening, as required under Section 7.1.4 of the Zoning By-Law, would be ineffective and is not required.

e. In light of the fact that the Premises has been commercially zoned for a substantial period of time, and a trucking terminal/motor freight station, as herein proposed, is a permitted use in said zone, and subject to the conditions hereinafter set forth as part of this Decision, the proposal will protect the adjoining premises against seriously detrimental or offensive uses on site.

(See Exhibit B).

27.    Following the allowance of the special permit, Robin and Carl LaGreca (hereafter "LaGrecas"), who alleged to be aggrieved individuals and who had appeared before the ZBA, filed a lawsuit against the Town ZBA members in the Massachusetts Superior Court, in which they challenged the Town's issuance of Crystal's special permit. *See* LaGreca v. Smith et al., Essex Superior Court, C.A. No. 99-1396. (See Docket Sheet, attached hereto as **Exhibit C**). That case is awaiting a trial on the merits.

28.    On or about May 9, 1999, Crystal filed a notice of intent with the Town Conservation Commission ("Concom"), pursuant to the Wetlands Protection Act. Mass. Gen. Laws Chapter 131, § 40. On or about October 5, 1999, the Conservation Commission issued an order denying Crystal the right to proceed with its site plan. Crystal appealed the Concom's denial to the Massachusetts Department of Environmental Protection (hereinafter "DEP"), which reversed the Concom's decision and allowed the site plan to proceed with certain stated conditions. The LaGrecas, along with another allegedly aggrieved person, Jette Mistry, appealed the DEP's decision to an administrative law judge (hereinafter "ALJ") for an adjudicatory hearing. After the hearing, the ALJ vacated the DEP order and, on remand, the Concom renewed its order denying Crystal the right to proceed with the site plan. Crystal appealed again to the DEP, which again reversed the Concom and allowed the plan to proceed with conditions. (See

DEP decision, attached hereto as **Exhibit D**). On or about November 2003, the LaGrecas again appealed to an ALJ, and as of this date, that appeal remains pending.

29. On or about October 2003, the LaGrecas presented a proposed "Diesel Fuel By-Law" to appear as a Warrant Article at the Town Meeting ("By-Law"). (See By-Law, attached hereto as Exhibit A). The purpose of the proposed By-Law was to nullify the special permit and DEP decisions authorizing Crystal to proceed with its project.

30. The proposed By-Law purports to prohibit, *inter alia*, any "commercial, industrial or business property that involves in any way the burning or use of diesel fuel or involves the regular use and operation of vehicles using or burning diesel fuel . . . within a proximity of one thousand feet of a residential area." (See Exhibit A). The proposed By-Law also requires all businesses to obtain a special "diesel burning site assignment" from the Town Board of Health prior to the "use or burning" of diesel fuel. The proposed By-Law would exempt all diesel fuel sites operating within the Town at the time of adoption of the By-Law, such as UPS's trucking terminal that abuts Crystal's Site, and, upon information and belief, which utilizes greater diesel fuel consumption than Crystal's proposed terminal at the Site.

31. Prior to the Town Meeting of November, 2003, Town Counsel expressed concerns about the legality of the By-Law to the Board of Selectmen. (See Minutes of Town Selectmen's Meeting, attached hereto as **Exhibit E**). The Board of Selectmen did not recommend passage of the By-Law at its annual Town Meeting, but instead forwarded the matter to the Town Board of Health for review.

32. In or about November 2003, following a public relations campaign in which the LaGrecas claimed that diesel fuel at the Site would cause physical harm to residents and their children, the Town adopted the By-Law at its Town meeting.

33. On or about January 29, 2004, the Massachusetts Attorney General's Office, which reviewed the By-Law pursuant to its self described "limited power" to determine whether the By-Law contained any "facial inconsistency" with a state law or state constitutional provision, approved the By-Law. However, the Attorney General recognized that despite his limited review authority, the language of the By-Law could arguably contain a "level of vagueness that could expose the by-law to challenge," and that, as applied, the 1000 foot setback of "diesel burning sites" from "residential areas" could be found to be unreasonable, especially for facilities in which the use of diesel is minimal and the facilities do not pose a public health or safety concern." (See Letter of Attorney General, attached hereto as **Exhibit F**).

34. The Town has informed Crystal that the By-Law prevents Crystal from operating a truck terminal at the Site.

35. The By-Law unreasonably prevents Crystal's access to the national interstate trucking network, terminals and points of loading or unloading, in violation of the Federal Surface Transportation Assistance Act (49 U.S.C. § 31111, *et seq.*), and regulations promulgated pursuant to the Act, and in violation of the ICC Termination Act of 1995, 49 U.S.C. § 14501(c).

### COUNT I
### (Declaratory Relief)

Plaintiff Crystal repeats and realleges each of the allegations contained in paragraphs 1 through 35 of this Complaint as though separately set forth herein.

36. A valid case and controversy exists sufficient for this Court to declare the rights and remedies of the parties, in that the By-Law is unconstitutional on its face and as applied to Crystal's use of its property and is preempted by federal law.

37. Despite permitting the Site for use as a trucking terminal in 1999 in accordance with its then existing By-Laws, the Town has informed Crystal that it may no longer use the Site

for said purpose by the terms of the By-Law passed in 2003. In direct reliance upon the Town's 1999 decision permitting the Site, Crystal expended substantial sums of money to comply with the Town's decision and develop the Site in such a manner as to meet increased customer demands and effectively operate its interstate motor carrier business.

38. In addition, the By-Law is preempted by the ICC Termination Act of 1995, 49 U.S.C. §14501(c)(1), which prohibits a state or a political subdivision of a state from enacting or enforcing a law, regulation or other provision having the force and effect of a law that relates to a price, route or service of any motor carrier. The By-Law clearly relates to and negatively affects Crystal's prices, routes and services as an interstate motor carrier by prohibiting Crystal's use of the Site for its interstate motor carrier business.

39. This controversy is ripe, and Crystal has standing to prosecute this action.

40. This Court should, therefore, enter an order declaring the Town's By-Law to be unconstitutional and in violation of federal law.

## COUNT II
### (Violation of 42 U.S.C. §1983)

Plaintiff Crystal repeats and realleges each of the allegations contained in paragraphs 1 through 40 of this Complaint as though separately set forth herein.

41. As alleged above, in 2003, the Town adopted a By-Law which prohibits any "commercial, industrial or business property that involves in any way the burning or use of diesel fuel or involves the regular use and operation of vehicles using or burning diesel fuel . . . within a proximity of one thousand feet of a residential area."

42. The Town has informed Crystal that the 2003 By-Law and policy adopted thereto prohibits operation of its truck terminal at the proposed Site because of Crystal's use of diesel fuel, despite its having received a valid site permit from the Town in 1999.

43. The Town has also informed Crystal that the same 2003 By-Law and policy adopted thereto exempts any diesel fuel sites now in operation within the Town, including the UPS trucking terminal which abuts the proposed Crystal Site and, upon information and belief, uses larger amounts of diesel fuel than Crystal has proposed using at its Site.

44. According to the Town, the 2003 By-Law has invalidated the Town's permit granted to Crystal in 1999 in accordance with the Town's Zoning By-Law expressly authorizing a trucking terminal at the proposed Site.

45. The Town's 2003 By-Law and policy adopted thereto deprives Crystal of rights, privileges and immunities guaranteed under the United States Constitution, including its liberty and property interests, because (a) it constitutes a violation of the dormant commerce clause (U.S. Const., Art. I, §8, cl. 3; (b) Crystal is denied due process of law because the By-Law is impermissibly vague and unreasonable, is arbitrary and capricious and, as applied to Crystal, constitutes reverse spot zoning; and (c) it constitutes an unconstitutional taking without just compensation, pursuant to the Fifth Amendment to the United States Constitution.

46. Crystal has suffered significant and substantial damages as a result of the Town's conduct, including the Town By-Law and policy adopted thereto.

47. Pursuant to 42 U.S.C. § 1983, Crystal is entitled to an award of damages against the Town. In addition, Crystal is further entitled to an award of attorney's fees, expenses and costs.

IV.  **Prayers For Relief.**

WHEREFORE, plaintiff Crystal Motor Express, Inc. respectfully requests that this Court enter judgment as follows:

1. Declaring that the Town's By-Law is unconstitutional because it constitutes a violation of Crystal's due process rights, is impermissibly vague and unreasonable, and is arbitrary and capricious;

2. Declaring that the By-Law is unconstitutional because it constitutes reverse spot zoning as applied to Crystal;

3. Declaring that the By-Law is unconstitutional because it is preempted by the Federal Surface Transportation Act and regulations promulgated in accordance therewith, 49 U.S.C. §§ 31111 *et seq.*, and is preempted by the ICC Termination Act of 1995, 49 U.S.C. §14501(c);

4. Declaring that the By-Law is unconstitutional because it constitutes a violation of the dormant commerce clause. U.S. Const., Art. I, § 8, cl. 3;

5. Declaring that the By-Law is unconstitutional because its validity would constitute an unconstitutional taking without just compensation, in violation of Crystal's rights under the Fifth Amendment to the United States Constitution;

6. Declaring that Crystal may use the Sits as a trucking terminal as previously permitted and authorized, without regard to the terms of the 2003 By-Law;

7. Awarding damages to Crystal based upon the Town's unconstitutional taking of Crystal's property, following a hearing to assess Crystal's damages;

8. Awarding damages, attorney's fees and costs to Crystal pursuant to 42 U.S.C. § 1983, based upon the Town's violation of Crystal's constitutional rights; and

9. Granting Crystal such other and further relief to which it is justly entitled.

                              CRYSTAL MOTOR EXPRESS, INC.

                              By its attorneys,

June 24, 2004

                              Wesley S. Chused (BBO#083520)
                              Edward V. Colbert III (BBO#566187)
                              Kimberly Y. Jones (BBO#632663)
                              LOONEY & GROSSMAN LLP
                              101 Arch Street
                              Boston, MA 02110
                              (617) 951-2800

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Crystal Motor Express, Inc.

## DEFENDANTS
Town of Lynnfield

FILED
CLERK'S OFFICE
2004 JUN 24 P 3: 12
DISTRICT OF MASS.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF: 25017
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT: 25009
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Wesley S. Chused, BBO #083520
Looney & Grossman LLP, 101 Arch St., Boston, MA 02110 (617) 951-2800

ATTORNEYS (IF KNOWN)
04 11450 RGS

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)
- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)
- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury – Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury – Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 535 Death Penalty | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 540 Mandamus & Other | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☒ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | ☐ 871 IRS – Third Party 26 USC 7609 | |
| | | ☐ 555 Prison Condition | ☐ 740 Railway Labor Act | |
| | | | ☐ 790 Other Labor Litigation | |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)
Action for declaratory judgment, 28 U.S.C. 2201(a) and for violation of plaintiff's civil rights, 42 U.S.C. 1983.

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $ N/A

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☒ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE: June 24, 2004
SIGNATURE OF ATTORNEY OF RECORD: /s/ Wesley S. Chused

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) Crystal Motor Express, Inc. v. Town of Lynnfield

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

   __ I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   X  II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,        *Also complete AO 120 or AO 121
           740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          for patent, trademark or copyright cases

   __ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
           315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
           380, 385, 450, 891.

   __ IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
           690, 810, 861-865, 870, 871, 875, 900.

   __ V.   150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

   None

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?

                                                                    YES        NO ✗

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST?  (SEE 28 USC §2403)

                                                                    YES        NO ✗

   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?

                                                                    YES        NO

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?

                                                                    YES        NO ✗

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).

                                                                    YES ✗      NO

   A. IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

      EASTERN DIVISION        CENTRAL DIVISION        WESTERN DIVISION

   B. IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

      EASTERN DIVISION        CENTRAL DIVISION        WESTERN DIVISION

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME   Wesley S. Chused
ADDRESS   Looney & Grossman LLP, 101 Arch Street, Boston, MA 02110
TELEPHONE NO.   (617) 951-2800

(Cover sheet local.wpd - 11/27/00)