UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

_____
                                                                    )
CRYSTAL MOTOR EXPRESS, INC., and  )
RONALD E. MASIELLO, TRUSTEE OF     )
CRYSTAL LAND INVESTMENT TRUST )
                                                                    )
                                    *Plaintiffs*,         )
v.                                                                 )          CIVIL ACTION
                                                                    )          NO. 04-11450-RGS
TOWN OF LYNNFIELD,                           )
                                                                    )
                                    *Defendant*.        )
_____)

**AMENDED COMPLAINT
FOR DECLARATORY JUDGMENT**

**I.        Summary of Complaint and Relief Sought.**

By this Amended Complaint, the plaintiffs, Crystal Motor Express, Inc. ("Crystal") and

Ronald E. Masiello, Trustee of Crystal Land Investment Trust (the "Trust"), seek a declaration

from this Court, pursuant to 28 U.S.C. § 2201(a), as to their rights to use a 13.8 acre parcel of

real estate ("Site") owned by the Trust and to be leased to Crystal on Kimball Lane in the Town

of Lynnfield ("Town") for use by Crystal in conducting its trucking business.  Crystal is an

interstate motor carrier of property (a trucking company) and conducts its operations pursuant to

operating authority issued by the Federal Motor Carrier Safety Administration pursuant to 49

U.S.C. §13101, *et seq*.  Crystal is owned, managed and controlled in common with the Trust.  In

1999, the Trust received a permit from the Town to develop the Site into a trucking terminal for

use by Crystal in interstate trucking business. In reliance on that permit, Plaintiffs expended

substantial sums of money in the expectation of establishing a trucking terminal on the Site.

Furthermore, Crystal's future interstate motor carrier operations and business plan depend

exclusively on using the Site in such manner, as more fully described below.

Crystal, which has been in business for over 50 years, conducts its interstate trucking

operations through the use of diesel fuel-powered tractor-trailer vehicles and straight trucks.  In

1999, the Town, after public hearings, issued a special permit authorizing the Trust to develop

the site for  use by Crystal as a trucking terminal ("Crystal Terminal") knowing that Crystal's

vehicles were diesel powered.  Approximately four years later, however, the Town adopted a By-

Law that purports to prevent operation of a trucking terminal at the site, by prohibiting

"commercial, industrial or business property that involves in any way the burning or use of diesel

fuel or involves the regular use and operation of vehicles using or burning diesel fuel . . . within a

proximity of one thousand feet of a residential area."  (*See* copy of By-Law, attached hereto as

**Exhibit A**).  The By-Law exempted existing uses, including a United Parcel Service trucking

terminal which is located on the same street as the proposed Crystal Terminal and which

operates many diesel trucks on a 24-hour basis within 1000 feet of residences.  The By-Law was

offered by an aggrieved resident who unsuccessfully challenged Plaintiffs' development proposal

before the Town planning board and the DEP and who sued the Town in 1999 following its

issuance of the special permit to the Trust.

By this Amended Complaint, Plaintiffs contend that the By-Law violates their rights

guaranteed under the United States Constitution and is preempted by federal law, in that: (a) it is

preempted by the Federal Surface Transportation Act and regulations promulgated in accordance

therewith, 49 U.S.C. §§ 31111(e), 31114; 23 C.F.R. § 658.5, and by the provisions of the ICC

Termination Act of 1995, 49 U.S.C. §14501(c); (b) it constitutes a violation of the dormant

commerce clause, U.S. Const., Art. I, § 8, cl. 3;  (c) it violates Plaintiffs' due process rights, in

that it is impermissibly vague and unreasonable, is arbitrary and capricious and, as applied to

Plaintiffs, would constitute reverse spot zoning; and, (d) it constitutes an unconstitutional taking

without just compensation, in violation of Plaintiffs' rights under the Fifth Amendment to the

United States Constitution.

**II.    Parties, Jurisdiction and Venue**.

1.    Plaintiff Crystal Motor Express, Inc. ("Crystal") is a Massachusetts corporation

and maintains its office and principal place of business at 3 Melvin Street, Wakefield, Middlesex

County, Massachusetts.

2.    Plaintiff Ronald E. Masiello, Trustee of Crystal Land Investment Trust (the

"Trust"), is a real estate trust having its principal office and place of business at 3 Melvin Street,

Wakefield, Middlesex County, Massachusetts.

3.    Defendant, Town of Lynnfield ("Town"), is a municipal corporation located in

Essex County in the Commonwealth of Massachusetts. The Trust and Crystal are commonly

owned, operated, managed and controlled.

4.    This action presents an actual case and controversy within the jurisdiction of this

Court and is, therefore, authorized pursuant to 28 U.S.C. § 2201.

5.    Federal question jurisdiction exists in that Plaintiffs seeks to determine their rights

under the Constitution and laws of the United States.  U.S. Const., Art. III, § 2;  28 U.S.C. §

1331 and 42 U.S.C. § 1983.  Federal question jurisdiction also exists pursuant to 28 U.S.C.

§1337(a) in this action arises under an Act of Congress regulating commerce, to wit:  the ICC

Termination Act of 1995, 49 U.S.C. §13101 ("ICCTA"), *et seq*.  Plaintiffs, therefore, call upon

this Court to interpret and declare the rights of the parties under federal law as a result of the

actions taken by the Town.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) in that the

defendant resides in this district and all or a substantial part of the events or omissions giving rise

to this controversy occurred within this judicial district.

### III.    Background Facts.

7.      Crystal is a family-owned and operated interstate motor carrier of property, duly

licensed by the Federal Motor Carrier Safety Administration ("FMCSA")[1] pursuant to 49 U.S.C.

§13902.  Crystal has been in the interstate transportation (trucking) business for more than 50

years.  For the past 40 years, Crystal has operated from its principal place of business in

Wakefield, Massachusetts.  Crystal employs approximately 100 people.

8.      Crystal performs overnight interstate freight transportation services throughout

New England, New York, New Jersey, Pennsylvania, Delaware and parts of Virginia.  Crystal

also performs same day pick-ups and deliveries to Logan International Airport in Boston,

Massachusetts.  Crystal operates a fleet of over two hundred vehicles, including tractors and

straight trucks, all of which are diesel-powered.  In addition, Crystal operates approximately one

hundred pieces of trailer equipment.

9.      In 1979, Crystal built a truck terminal at 3 Melvin Street, Wakefield, MA, where

it operates today (hereinafter "Wakefield Terminal").

10.     Crystal's terminal location is critical to its operations.  The Wakefield Terminal is

less than 2½ miles from Interstate 95, which provides critical access to other major routes such

as U.S. Route 1, Interstate 93, Interstate 90 (the Massachusetts Turnpike), and Interstate 495 as

well as many state and local roads and highways.  The majority of Crystal's customers are

---

[1] The FMCSA is the successor regulatory agency to the former Interstate Commerce Commission and administers the ICCTA as to interstate motor carriers such as Crystal.

located within the Interstate 495 belt area, allowing Crystal to service them on an overnight basis to and from Logan International Airport and elsewhere throughout the northeast.

11.    Crystal's largest single account - approximately 10 percent of its revenue - is generated from its warehouse operation, which is located 8 miles from the Wakefield Terminal.

12.    Crystal maintains its own tire operation from which it supplies tires for and maintains its trucks.  Crystal's trucks are inspected twice daily and tires replaced accordingly to insure safe operations.  Crystal's tire operation is located at 465 Water Street in Wakefield, Massachusetts, less than one mile from its Wakefield Terminal.

13.    Crystal's Wakefield Terminal is located on a 3-acre site, and consists of 26 doors for loading and unloading of freight from and onto trailers, and 22,000 square feet of platform area.

14.    From 1992 to 2002, Crystal's business more than doubled.  In fiscal year 1992, Crystal handled 62,672 shipments weighing 108,542,000 pounds.  In fiscal year 2002, Crystal handled over 128,000 shipments of over 235,000,000 pounds.

15.    In order to properly serve its customers and handle their interstate shipments, Crystal requires more platform space than is currently available at its Wakefield Terminal.  However, Crystal is unable to expand its Wakefield Terminal due to the lack of land at that location.

16.    Crystal's inadequate space at its Wakefield Terminal has caused lost and mis-delivered freight, the inability to deliver freight, an increase in customer claims against Crystal, safety concerns, and other operational and service inefficiencies that threaten and impair Crystal's ability to provide a reliable, efficient and competitive interstate motor carrier service.

17.    Crystal operates in a very competitive industry. There are at least fifteen motor carriers known to Crystal who perform the same services as Crystal within its same service area. Crystal has lost customers to these competitors over the last several years due to its inadequate space at its Wakefield Terminal.

18.    Beginning around 1992, Crystal began a lengthy and expensive process of locating a new terminal of adequate size, or in the alternative, adequate sites upon which to build a larger terminal to be able to properly serve its customers.  Crystal contacted approximately 15 real estate brokers to assist it in that effort.

19.    Crystal was unable to locate land that would allow for a trucking terminal under existing zoning laws in the surrounding towns of Lynn, Chelsea, Revere, Salem, Peabody, Danvers, Tewksbury, Dracut, Wilmington and Woburn, Massachusetts.

20.    On or about November 23, 1998, Crystal, through its owner, Ronald E. Masiello, as Trustee of the Trust, executed a Purchase and Sale Agreement (hereinafter "P&S") for a 13.8-acre site ("Site") located on Kimball Lane in Lynnfield, Massachusetts.  The Trust purchased the Site with the intention of constructing a new trucking terminal thereon, and then leasing it to Crystal, which would alleviate Crystal's above-described operational problems.

21.    The Site was formerly utilized as a horseracing track.  The Site abuts a United Parcel Service ("UPS") facility.  Upon information and belief, UPS operates over 100 gasoline and diesel powered trucks on a 24-hour per day basis and maintains fuel tanks at that facility.

22.    When the P&S was signed, Section 4.4(6) of the Town's Zoning By-Laws expressly permitted a "trucking terminal or motor freight station" to be located within the zone covering the Site.  The Site would be approximately the same distance from Crystal's warehouse as its existing Wakefield terminal, and approximately the same amount of fuel would be burned

to travel between them.  Crystal's second largest account, which is located in Woburn,

Massachusetts, is also approximately the same distance from the site as its present Wakefield

Terminal, and Crystal's trucks would burn approximately the same amount of fuel to travel

between them.

23.     In or about December 1998, the Trust applied to Lynnfield's Town Zoning Board

of Appeals (hereinafter "ZBA") for a special permit to use the Site as a trucking terminal.  In its

application, the Trust informed the Town of the facts related to Crystal's intended use of the Site,

including the approximate number of diesel fuel trucks that would enter and exit the Site on a

daily basis and the storage of diesel fuel at the Site.

24.     The ZBA conducted two public hearings on the application.  At both of those

public hearings, residents of the Town had an opportunity to raise issues concerning the impact

that use of the Site as a trucking terminal might have on abutters, the environment, and

neighborhoods.

25.     In or about January 1999, the Town Planning Board issued a written

recommendation to the Town ZBA that the Trust's application be approved.  (*See* Decision of

Town Zoning Board of Appeal dated June 28, 1999 at p. 12, attached hereto as **Exhibit B**).

26.     In or about March 1999, the Trust recorded its site plan with the Town Planning

Board under Mass. Gen. Laws Chapter 40A, § 6, and the Town Planning Board approved the

plan on or about March 17, 1999.  As a result, the Town ZBA determined that the Trust's

application for special permit was to be determined under the Town By-Laws that existed at the

time of the filing of the application, rather than any By-law that might subsequently be adopted

by the Town. (*See* Exhibit B, p. 12).

27.     On or about April 6, 1999, following the two hearings, the ZBA approved the

Trust's application and issued a special permit authorizing the Trust to use the Site for a truck

terminal. (See Exhibit B). In issuing the special permit, the ZBA specifically found, *inter alia*, that:

    a. The Premises is located wholly within Commercial District of the Town of Lynnfield.

    b. A trucking terminal use is a permitted use in the Commercial District of the Town of Lynnfield.

    c. The Trust's rights to proceed with the proposal are protected under M.G.L. Chapter 40A, Section 6, by virtue of the action of the Lynnfield Planning Board on March 17, 1999 when it signed as an Approval Not Required Plan, the plan entitled "Plan of Land #10 Kimball Lane, Lynnfield, Mass.", Assessors Map 54 Parcel 2486, dated March 17, 1999 by Hayes Engineering, Inc.

    d. Based on the location of the proposed building and activities, the distance from the nearest abutting residential properties in Lynnfield, the proposed activity of the Petitioner on the Premises, and the significant difference in topography between the commercial site and the adjoining residential sites, screening, as required under Section 7.1.4 of the Zoning By-Law, would be ineffective and is not required.

    e. In light of the fact that the Premises has been commercially zoned for a substantial period of time, and a trucking terminal/motor freight station, as herein proposed, is a permitted use in said zone, and subject to the conditions hereinafter set forth as part of this Decision, the proposal will protect the adjoining premises against seriously detrimental or offensive uses on site.

(*See* Exhibit B).

28. Following the allowance of the special permit, Robin and Carl LaGreca (hereafter "LaGrecas"), who alleged to be aggrieved individuals and who had appeared before the ZBA, filed a lawsuit against the Town ZBA members in the Massachusetts Superior Court, in which they challenged the Town's issuance of the Trust's special permit. *See LaGreca v. Smith et al.*, Essex Superior Court, C.A. No. 99-1396. (*See* Docket Sheet, attached hereto as **Exhibit C**). That case has been tried and the parties are awaiting a decision on the merits.

29. On or about May 9, 1999, the Trust filed a notice of intent with the Town Conservation Commission ("Concom"), pursuant to the Wetlands Protection Act. Mass. Gen. Laws Chapter 131, § 40. On or about October 5, 1999, the Concom issued an order denying the Trust the right to proceed with its site plan. The Trust appealed the Concom's denial to the

Massachusetts Department of Environmental Protection (hereinafter "DEP"), which reversed the

Concom's decision and allowed the site plan to proceed with certain stated conditions.  The

LaGrecas, along with another allegedly aggrieved person, Jette Mistry, appealed the DEP's

decision to an administrative law judge (hereinafter "ALJ") for an adjudicatory hearing.  After

the hearing, the ALJ vacated the DEP order and, on remand, the Concom renewed its order

denying the Trust the right to proceed with the site plan.  The Trust appealed again to the DEP,

which again reversed the Concom and allowed the plan to proceed with conditions.  (*See* DEP

decision, attached hereto as **Exhibit D**).  On or about November 2003, the LaGrecas again

appealed to an ALJ, and as of this date, that appeal remains pending.

30.    On or about October 2003, the LaGrecas presented a proposed "Diesel Fuel By-

Law" to appear as a Warrant Article at the Town Meeting ("By-Law").  (*See* By-Law, attached

hereto as Exhibit A).  The purpose of the proposed By-Law was to nullify the special permit and

DEP decisions authorizing the Trust and Crystal to proceed with their project.

31.    The proposed By-Law purports to prohibit, *inter alia*, any "commercial, industrial

or business property that involves in any way the burning or use of diesel fuel or involves the

regular use and operation of vehicles using or burning diesel fuel . . . within a proximity of one

thousand feet of a residential area."  (*See* Exhibit A).  The proposed By-Law also requires all

businesses to obtain a special "diesel burning site assignment" from the Town Board of Health

prior to the "use or burning" of diesel fuel.  The proposed By-Law would exempt all diesel fuel

sites operating within the Town at the time of adoption of the By-Law, such as UPS's trucking

terminal that abuts the Plaintiffs' Site, and, upon information and belief, which utilizes greater

diesel fuel consumption than the Plaintiffs' proposed terminal at the Site.

32.    Prior to the Town Meeting of November, 2003, Town Counsel expressed

concerns about the legality of the By-Law to the Board of Selectmen.  (*See* Minutes of Town

Selectmen's Meeting, attached hereto as **Exhibit E**).  The Board of Selectmen did not

recommend passage of the By-Law at its annual Town Meeting, but instead forwarded the matter

to the Town Board of Health for review.

33.    In or about November 2003, following a public relations campaign in which the

LaGrecas claimed that diesel fuel at the Site would cause physical harm to residents and their

children, the Town adopted the By-Law at its Town meeting.

34.    On or about January 29, 2004, the Massachusetts Attorney General's Office,

which reviewed the By-Law pursuant to its self described "limited power" to determine whether

the By-Law contained any "facial inconsistency" with a state law or state constitutional

provision, approved the By-Law.  However, the Attorney General recognized that despite his

limited review authority, the language of the By-Law could arguably contain a "level of

vagueness that could expose the by-law to challenge," and that, as applied, the 1000 foot setback

of "diesel burning sites" from "residential areas" could be found to be unreasonable, especially

for facilities in which the use of diesel is minimal and the facilities do not pose a public health or

safety concern."  (*See* Letter of Attorney General, attached hereto as **Exhibit F**).

35.    The Town has informed the Plaintiffs that the By-Law prevents them from

operating a truck terminal at the Site.

36.    The By-Law unreasonably prevents Crystal's access to the national interstate

trucking network, terminals and points of loading or unloading, in violation of the Federal

Surface Transportation Assistance Act (49 U.S.C. § 31111, *et seq.*), and regulations promulgated

pursuant to the Act, and adversely affects Crystal's prices, routes, and services as an interstate

motor carrier in violation of the ICC Termination Act of 1995, 49 U.S.C. § 14501(c).

## COUNT I
### (Declaratory Relief)

Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 through 36

of this Amended Complaint as though separately set forth herein.

37.    A valid case and controversy exists sufficient for this Court to declare the rights

and remedies of the parties, in that the By-Law is unconstitutional on its face and as applied to

Plaintiffs' use of their property and is preempted by federal law.

38.    Despite permitting the Site for use as a trucking terminal in 1999 in accordance

with its then existing By-Laws, the Town has informed Plaintiffs that they may not use the Site

for said purpose by the terms of the By-Law passed in 2003.  In direct reliance upon the Town's

1999 decision permitting the Site, Plaintiffs expended substantial sums of money to comply with

the Town's decision and develop the Site in such a manner as to meet increased customer

demands and effectively operate Crystal's interstate motor carrier business.

39.    In addition, the By-Law is preempted by the ICC Termination Act of 1995, 49

U.S.C. §14501(c)(1), which prohibits a state or a political subdivision of a state from enacting or

enforcing a law, regulation or other provision having the force and effect of a law that relates to a

price, route or service of any motor carrier.  The By-Law clearly relates to and negatively affects

Crystal's prices, routes and services as an interstate motor carrier by prohibiting Crystal's use of

the Site for its interstate motor carrier business.

40.    This controversy is ripe, and Plaintiffs have standing to prosecute this action.

41.    This Court should, therefore, enter an order declaring the Town's By-Law to be

unconstitutional and in violation of federal law.

## COUNT II
### (Violation of 42 U.S.C. §1983)

Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 through 41 of this Amended Complaint as though separately set forth herein.

42.    As alleged above, in 2003, the Town adopted a By-Law which prohibits any "commercial, industrial or business property that involves in any way the burning or use of diesel fuel or involves the regular use and operation of vehicles using or burning diesel fuel . . . within a proximity of one thousand feet of a residential area."

43.    The Town has informed Plaintiffs that the 2003 By-Law and policy adopted pursuant thereto prohibit operation of Plaintiffs' truck terminal at the proposed Site because of Crystal's use of diesel fuel, despite its having received a valid site permit from the Town in 1999.

44.    The Town has also informed Plaintiffs that the same 2003 By-Law and policy adopted thereto exempts any diesel fuel sites now in operation within the Town, including the UPS trucking terminal which abuts the proposed Crystal Site and, upon information and belief, uses larger amounts of diesel fuel than Crystal has proposed using at its Site.

45.    According to the Town, the 2003 By-Law has invalidated the Town's permit granted to the Trust in 1999 in accordance with the Town's Zoning By-Law expressly authorizing a trucking terminal at the proposed Site.

46.    The Town's 2003 By-Law and policy adopted thereto deprives Plaintiffs of rights, privileges and immunities guaranteed under the United States Constitution, including their liberty and property interests, because (a) it constitutes a violation of the dormant commerce clause (U.S. Const., Art. I, §8, cl. 3; (b) Plaintiffs are denied due process of law because the By-Law is impermissibly vague and unreasonable, is arbitrary and capricious and, as applied to

Plaintiffs, constitutes reverse spot zoning; and (c) it constitutes an unconstitutional taking without just compensation, pursuant to the Fifth Amendment to the United States Constitution.

47.     Plaintiffs have suffered significant and substantial damages as a result of the Town's conduct, including the Town By-Law and policy adopted thereto.

48.     Pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to an award of damages against the Town.  In addition, Plaintiffs are further entitled to an award of attorney's fees, expenses and costs.

**COUNT III**
**(Preemption by 49 U.S.C. §14501(c)(1))**

Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 through 48 of this Amended Complaint as though separately set forth herein.

49.     The By-Law is preempted by the ICC Termination Act of 1995, 49 U.S.C. §14501(c)(1), which prohibits a state or a political subdivision of a state from enacting or enforcing a law, regulation or other provision having the force and effect of a law that relates to a price, route or service of any motor carrier.  The By-Law clearly relates to and negatively affects Crystal's prices, routes and services as an interstate motor carrier by prohibiting Crystal's use of the Site for its interstate motor carrier business.

50.     This Court should, therefore, enter an Order declaring the Town's By-Law in violation of Federal law and preempted by 49 U.S.C. §14501(c)(1).

**IV.     Prayers For Relief.**

WHEREFORE, plaintiffs Crystal Motor Express, Inc. and Ronald E. Masiello, Trustee of Crystal Land Investment Trust respectfully pray that this Court enter judgment as follows:

1.  Declaring that the Town's By-Law is unconstitutional because it constitutes a violation of Plaintiffs' due process rights, is impermissibly vague and unreasonable, and is arbitrary and capricious;

2.  Declaring that the By-Law is unconstitutional because it constitutes reverse spot zoning as applied to Plaintiffs;

3.  Declaring that the By-Law is unconstitutional because it is preempted by the Federal Surface Transportation Act and regulations promulgated in accordance therewith, 49 U.S.C. §§ 31111 *et seq.*, and is preempted by the ICC Termination Act of 1995, 49 U.S.C. §14501(c);

4.  Declaring that the By-Law is preempted by 49 U.S.C. §14501(c)(1).

5.  Declaring that the By-Law is unconstitutional because it constitutes a violation of the dormant commerce clause.  U.S. Const., Art. I, § 8, cl. 3;

6.  Declaring that the By-Law is unconstitutional because its validity would constitute an unconstitutional taking without just compensation, in violation of Crystal's rights under the Fifth Amendment to the United States Constitution;

7.  Declaring that Crystal may use the Sits as a trucking terminal as previously permitted and authorized, without regard to the terms of the 2003 By-Law;

8.  Awarding damages to Crystal based upon the Town's unconstitutional taking of Crystal's property, following a hearing to assess Crystal's damages;

9.  Awarding damages, attorney's fees and costs to Crystal pursuant to 42 U.S.C. § 1983, based upon the Town's violation of Crystal's constitutional rights; and

10. Granting Crystal such other and further relief to which it is justly entitled.

CRYSTAL MOTOR EXPRESS, INC. and
RONALD E. MASIELLO, TRUSTEE OF
CRYSTAL LAND INVESTMENT TRUST

By their attorneys,


\_\_\s\ Edward V. Colbert III_____

March 28, 2005                 Wesley S. Chused (BBO#083520)
Edward V. Colbert III (BBO#566187)
LOONEY & GROSSMAN LLP
101 Arch Street
Boston, MA 02110
(617) 951-2800