UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CRYSTAL MOTOR EXPRESS, INC., and ) | |
| ) | |
| *Plaintiff*, ) | |
| v. ) | CIVIL ACTION |
| ) | NO. 04-11450-RGS |
| TOWN OF LYNNFIELD, ) | |
| ) | |
| *Defendant*. ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
TO COMPEL DISCOVERY**

The Plaintiff, Crystal Motor Express, Inc. ("Crystal"), moves to compel the defendant Town of Lynnfield ("town"): (a) to produce documents and testify as to matters for which the town has asserted an attorney-client privilege, (b) to produce its insurance policy or policies under which it may be liable to satisfy a judgment in this matter.

**I.     Nature of The Case**

In this lawsuit, Crystal, an interstate motor carrier, seeks money damages under 42 U.S.C. s. 1983 and to invalidate a town by-law that purports to restrict the burning or use of diesel fuel in the town (hereinafter "diesel fuel by-law"). Crystal claims that the diesel fuel by-law is preempted by the ICC Termination Act of 1995, 49 U.S.C. §14501(c)(1), which prohibits a state or a political subdivision of a state from enacting or enforcing a law, regulation or other provision having the force and effect of a law that relates to a price, route or service of any motor carrier. Crystal also claims that the diesel fuel by-law violates interstate commerce, is

impermissibly vague and unreasonable, is arbitrary and capricious, and constitutes an unconstitutional taking of property without just compensation.

### II.      Factual/Procedural Background.

In 1999, the town granted Crystal a site permit to develop a trucking terminal on land Crystal purchased in reliance on the town's zoning by-laws, which expressly permitted use of the land as a trucking terminal. In further reliance on the town zoning by-laws and the issuance of the site permit, Crystal expended substantial sums of money in the reasonable expectation of developing a trucking terminal at the site.

Following issuance of the permit, an alleged abutter to the site, Robin Lagreca, filed a lawsuit in Essex Superior Court against Crystal and the town, seeking to invalidate the permit. Recently, the Superior Court upheld the town's issuance of the permit to Crystal, finding after a trial that the town had placed reasonable conditions upon Crystal's operation of the site as a trucking terminal and that the Lagreca's would not be harmed. (*See Lagreca v. Smith et al., Essex Superior Court C.A. No. 99-1396, Findings of Fact Rulings of Law and Order, April 27, 2005) (Exhibit A).*[1]

In addition to challenging Crystal through the Superior Court action, Ms. Lagreca's husband, Carl Lagreca, requested that the town Board of Health stop Crystal's development of the site. Among other reasons, Mr. Lagreca claimed that catastrophic harm would be caused to residents from the diesel fumes coming from Crystal's trucks.[2] Mr. Lagreca submitted proposed

---

[1] Although Robin Lagreca filed a Notice of Appeal of the Superior Court decision, she and her husband have since sold their home that she claimed abutted the Crystal site, and Crystal understands that the appeal has been withdrawn.

[2] Although he tried all means to stop the Crystal, Mr. Lagreca did not seek to prohibit or limit the use of diesel fuel being burned by UPS trucks at a UPS facility that abuts the Crystal site and the Lagreca neighborhood. When the diesel fuel by-law proposed by Lagreca was adopted at the town meeting, it expressly exempted existing facilities in the town that burned diesel fuel, such as UPS. According to the town administrator and Chairman of the Board of Health, who were deposed as Rule 30(b)(6) witnesses in this lawsuit, no study was ever done prior to adoption of the by-law relating to diesel fuel emissions in the town or the potential harm that could be caused by any diesel fuel

regulations to the Board of Health that would have restricted the use or burning of diesel fuel in the town. (See Exhibit B). The Board of Health did not adopt the regulation proposed by Mr. Lagreca, and the evidence suggests that Town Counsel advised against such adoption.

After the diesel fuel by-law was passed at a town meeting in November 2003, the Board of Health adopted regulations concerning the use and burning of diesel fuel. When adopting the regulations the second time around, the Board of Health was advised by Town Counsel to adopt the regulations under *both* the diesel fuel by-law and under separate statutory authority, Mass. Gen. Laws Chapter 111, s. 31c and 143.[3]

### III. Crystal Is Entitled To Discover All Statements And Documents Involving Town Counsel That Relate To Crystal, The Diesel Fuel By-Law, and Regulations Adopted By The Board of Health.

Crystal is entitled to discover the actions taken by the town in adopting the diesel fuel by-law and regulations, and the rationale for those actions. This is particularly so where, as here, there was no scientific study or support for the diesel fuel by-law that related in any way to the level of diesel emissions in the town or the health risk to residents from these emissions.

Among the evidence, it is clear that Town Counsel was directly involved in the adoption of the by-law, as well as subsequent regulations purportedly promulgated pursuant to the by-law. In fact, meeting minutes and legal memoranda obtained as part of this lawsuit include statements by Town Counsel advising town officials about the legal problems with the diesel fuel by-law and the regulations. These include:

---

burning facility in the town. Moreover, Crystal is the only entity known to the town that is seeking to construct a facility that would be affected by the diesel fuel by-law.

[3] Following adoption of the regulations by the town Board of Health, the regulations were forwarded to the Massachusetts Department of Environmental Protection (DEP) for approval, as required by Mass. Gen. Laws Chapter 111, s. 143. Approximately one year has passed since the regulations were forwarded to the DEP for approval, yet the DEP has still not approved the regulations.

- Written minutes of a meeting of the town Planning Board of October 8, 2003, which demonstrate that Town Counsel advised against adopting the proposal in the form of regulations, and advised that if the proposal were to become law it should be adopted into a by-law at a town meeting. (Exhibit C).

- A Board of Selectmen meeting of October 20, 2003, during which Town Counsel advised the board that if the town adopted the by-law it could expect a lawsuit from Crystal because of a "regulatory taking" of their property. The minutes of this meeting also state that Town Counsel recommended that the proposed by-law be forwarded to the town Board of Health "for a more nuanced response." (Exhibit D).

- A letter from Board of Health agent James Nugent to Town Counsel on December 9, 2003, enclosing a draft of regulations pertaining to the diesel fuel by-law. (Exhibit E).

- A legal memorandum from Town Counsel to Board of Health agent James Nugent on January 6, 2004, where Town Counsel provides edits Board of Health draft regulations; and approves of a "belt and suspenders" approach of adopting the regulations under both the diesel fuel by-law and Mass. Gen. Laws Chapter 111, in the event the diesel fuel by-law is declared invalid. (Exhibit F).

According to the Town Administrator, William Gustus, he had several discussions with Town Counsel about the diesel fuel by-law before this lawsuit was filed. (See Deposition of William Gustus, Town Administrator, pp. 31-43) (Exhibit G). When asked about the substance of those conversations during a deposition, the town refused to answer upon instructions of counsel. (Id.).

Additionally, the town has recently disclosed a number of documents, in the form of meeting minutes, over which it has asserted an attorney-client privilege, and has indicated that a deposition of Town Counsel will likely involve assertions of the privilege as to communications he had with town officials. (Exhibit H).

Crystal is entitled to discover all documents and communications over which the town has asserted an attorney-client privilege, due to the clear waiver of any such applicable privilege in this case and the need for Crystal to be able to discover the entire truth about adoption of the by-law and regulations.

The attorney-client privilege "must be narrowly construed because it comes with substantial costs and stands as an obstacle of sorts to the search for truth." In re XYZ Corp., 348 F.3d 16, 22 (1st Cir. 2003).  As with any privilege, attorney-client privilege can be waived. Greater Newburyport Clamshell Alliance v. Public Serv. Co. of N.H., 838 F.2d 13, 17 (1st Cir. 1988).  This is especially true in a civil proceeding where, because the privilege lacks a constitutional dimension, the "liberal federal policy favoring discovery is of substantially greater relative weight." Id. at 19.

Here, the attorney-client privilege was expressly waived when discussions about the diesel fuel by-law involving town counsel and public officials were disclosed during public meetings of the Board of Selectmen and Planning Board.  These discussions occurred before the diesel fuel by-law was passed, and prior to this lawsuit being filed in June 2004.

Additionally, documents revealing these conversations involving town counsel and town counsel's own legal memoranda were produced to Crystal as part of a public records request back in March 2004 made directly Town Counsel.  This disclosure of documents involving communications between Town Counsel and town officials clearly demonstrates a waiver of any

attorney-client privilege that is now being asserted by the town.  See, e.g., U.S. v. MIT, 129 F.3d 681 (1st Cir. 1997) (disclosure of documents to audit agency during review of performance contracts forfeited any attorney-client privilege).  To allow the town to initially disclose certain communications that involved town counsel, and to selectively or later on refuse to disclose others, is inconsistent with the law, the purpose underlying the attorney-client privilege to guard only confidential communications, and would unfairly prejudice Crystal's right to discover the truth.[4]  Moreover, because the rationale for adoption of the diesel fuel by-law and regulations are squarely at issue in this case, Crystal should be permitted to discover all and not simply part of this material.

### IV. Crystal Is Entitled To A Copy Of The Town's Insurance Policies.

On October 4, 2004, the town disclosed the existence of insurance agreements that may be liable to satisfy a judgment in this matter.  (See Town Automatic Disclosure, p. 8) (Exhibit I).  While the town produced copies of other disclosed documents, it never produced any insurance agreements.  Despite numerous requests, the town still has not produced a copy of the insurance agreements despite repeated assurances that it would do so.

Crystal has a claim for money damages against the town, yet despite assurances from the town has no knowledge as to the availability of insurance to cover its claim.  Crystal is entitled to the insurance agreements pursuant to the express terms of Fed. R. Civ. P. 26(a)(1)(D), and respectfully requests that the town be compelled to produce the agreements immediately and pay Crystal's costs incurred in the pursuing the agreements in an amount determined by the Court.

---

[4] This is not a case where this Court is being asked to determine an inadvertent waiver, and the reasonableness of the town's protection of any such privilege is subject to review.  Cf. Amgen Inc. v. Hoechst Marion Roussel, Inc., 190 F.R.D. 287 (D. Mass. 2000).   Here, Town Counsel himself voluntarily produced material that reflected his communications with town officials, and the town has not made any claim that the material was inadvertently disclosed.

                CRYSTAL MOTOR EXPRESS, INC. and
RONALD E. MASIELLO, TRUSTEE OF
CRYSTAL LAND INVESTMENT TRUST

By their attorneys,

August 11, 2005

\s\ Edward V. Colbert III
Wesley S. Chused (BBO#083520)
Edward V. Colbert, III (BBO#566187)
LOONEY & GROSSMAN LLP
101 Arch Street
Boston, MA 02110
(617) 951-2800