# EXHIBIT A

26

# COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS.

SUPERIOR COURT
NO. 99-1396

ROBIN LAGRECA

V.

JOHN C. SMITH, ANTHONY R. RIZZO
JOHN B. ROGERS, as they are members
of the Zoning Board of Appeals of the Town
of Lynnfield and RONALD E. MASIELLO,
as he is Trustee of Crystal Land Investment Trust

EXHIBIT: 22
DATE: 7-20-05
Peinert
P. BRACKEN

## FINDINGS OF FACT, RULINGS OF LAW AND ORDER

### I. Introduction.

This matter came before the Court for trial, jury waived, on July 16, 19, 28 and December 16, 2004, in an action brought by Robin LaGreca under Chapter 40A, Section 17 to annul the decision of the Zoning Board of Appeals of the Town of Lynnfield. The plaintiff claims that in granting an application for a site plan special permit to Ronald E. Masiello, Trustee of Crystal Land Investment Trust, the Zoning Board of Appeals exceeded its authority and its decision was materially deficient.

### II.

Based on the evidence I deem credible together with reasonable inferences drawn therefrom, I find the following facts:

The plaintiff, Robin LaGreca ("LaGreca") is the owner of property located at 27 Blue Jay Road in Lynnfield. That property is in a residential zone. However, the LaGreca property abuts property owned by the defendant, Ronald E. Masiello, Trustee of Crystal Land Investment Trust ("Masiello") at 10 Kimball Lane ("the site").

Masiello owns a trucking business, whose base is currently in Wakefield. Due to the

growth of his business, operating as Crystal Trucking, he had been looking for sometime for a larger, more advantageous parcel of land upon which to locate his business. The business is a trucking freight business in which various trucks carry various loads to and from the terminal. At the terminal, loading and unloading takes place. Masiello's search for a new location for his business ended when he found the site in Lynnfield because the land was the right size and being located in a commercial zoning district, a business like his, a trucking terminal, was a specifically delineated permitted use. In fact, his proposed trucking business was not the first commercial use in the site or surrounding lots. The site itself was once the home of a horse racetrack and indeed even today, the remnants of that use are still visible. At the time LaGreca purchased the property and moved into her home at 27 Blue Jay Road, the signs of this discarded use were visible and Section 4.4.6 of the zoning by-laws, permitting a trucking terminal or motor freight station was in full force and effect, knowable to any potential purchaser of residential property abutting it.[1]

In December of 1998, Masiello submitted an application for a site plan special permit to the Zoning Board of Appeals. The purpose was to construct a trucking terminal. Since this was a permitted use on the site in this commercial district, an Approval-Not-Required plan was submitted to and approved by the Planning Board for endorsement under the provisions of G.L. c. 41, Section 81P. As a result of that endorsement of the Approval Not Required plan, the use as a trucking terminal has remained a permitted use pursuant to M.G.L. c. 40A, Section 6.

On or about December 31, 1998, Masiello filed a Petition with Zoning Board of Appeals seeking approval if a site plan under Section 7.4 of the zoning by-laws.

---

[1] There already exists adjacent to the site a UPS facility which conducts a similar type of business as that proposed and already results in the type of activity in the vicinity of the LaGreca property which the plaintiff finds offensive.

The proposed project included retaining a single existing building on the site which has a base floor area of 5,720 square feet. A proposed building with a footprint of approximately 45,035 square feet, the majority of which is to be a single story, would be used for a trucking terminal, administrative offices and a maintenance garage. At the northerly end of the proposed building, there will be a two-story area having a footprint of 2,930 square feet which will consist of office area; and at the far end of the building, there will be a maintenance garage with a single floor containing 7,700 square feet. The terminal itself will have an area of approximately 34,375 square feet on the single floor. The total combined area of the proposed and existing building would total substantially below the fifty maximum lot coverage require under the by-laws, set forth in Section 10.7. The height of the building will not exceed the three-story restriction or the forty-foot height limitation set forth in Section 10.1 of the by-law.

The site conforms with lot area and frontage requirements set forth in Section 10.3 of the zoning law, conforms with lot width and lot shape requirements set forth in Sections 10.4 and 10.5, respectively and satisfies all setback and sideyard requirements as set forth in Section 10.8. At its closest point, the proposed building is approximately 400 feet from the nearest residential district and from between 710 and 950 feet from the abutters' homes. However, the proposed building is approximately 710 feet from the nearest residence and over 1000 feet from the LaGreca property. There is a significant difference in topography between the average grade of the locus and the adjoining residences which in some areas exceeds 30 feet. Although the plaintiff, Robyn LaGreca testified as to sights and sounds she experienced emanating from the Masiello business, this Court does accept this testimony as credible. Nor does this Court find the testimony of her husband, Carl LaGreca, to have been credible. The topographical rise from the Masiello lot to the LaGreca coupled with the wooded character of the land shields the

CM 4484

LaGreca property from light and sound that will no doubt be generated on the site by the trucking business.[2]    Even in the winter months when there is no shielding from sound and light by heavily foliaged trees, it is clear that any noise or light emanating from the site is truly negligible. In fact, there is some dispute regarding some of the lights represented to the Court as being from the Masiello property on the plaintiff's videotape.    There has been some suggestion that these are from the UPS facility and the plaintiff herself testified that the light she sees now from her property is that which emanates from an abutting property, located in The Town Saugus, referred to in trial testimony as belonging to "the McCarthys".

A review of the tapes as well as the exhibits, makes clear to this Court that there will be no noise or light from the proposed use as feared by the plaintiff.    Although it is possible that there may be some light occasionally viewed from the back of the plaintiff's property and similarly some sounds in the winter months, when the grounds are devoid of light and sound shielding foliage, it is clear that neither are of a magnitude which could remotely be considered to rise to the level of unacceptable or intrusive.    When the plaintiff is on her deck and/or enjoying her pool and back yard, there is ample foliage and it is a false premise to judge the impact of the proposed use solely in the winter months. This Court simply does not credit the testimony of Robin LaGreca as being credible to the extent she described the noise and light as being intrusive.    To the contrary, the proposed lighting including its location, type, shielding and intensity will work to minimize and for the most part eliminate any light intrusion on adjoining properties such as LaGreca's.

_____

[2]This Court gave both parties to present to it, videotapes which would demonstrate the existence or lack of noise and light.    Although the Court had ordered that this be done shortly after the jury waived trial, it was not done in the timely fashion ordered.    Therefore, by Court order, the parties were ordered to complete the videotaping by December 16, 2004. Therefore, although not intended, the delay resulted in the Court being given an opportunity to view the locus, by of videotape, at night, when there were no leaves on the trees, as plaintiff wished.

The fact that there will be no effect on the LaGreca property is due, in large part, to a number of precautions which are going to be taken, above and beyond the simple fact that the topography and distances simply do not support LaGreca's claims of noise and light invading her home and peace and quiet. For example, the trucks on the site do not have back up beepers, will not use air horns and will not be allowed to idle for more than a few minutes after they back the trailer to the loading dock. The loading docks are all equipped with a sleeve like device that connects the proposed building to the open end of the trailer to protect the argo from the elements. This feature has the further benefit or reduce and/or eliminating the risk of noise and light. Lights on the proposed building will be shielded so that no direct light will pass of the site. All of the credible evidence supports this Court's conclusion that any disturbance or intrusion caused by truck noise and/or light is de minimus and indeed no different or greater than that currently experienced by living in close proximity to other potentially worrisome businesses.[3] For example, the site is abutted along its northerly boundary by a UPS trucking terminal and to its south by an office trailer rental business, both of which have operated for many years including at the time LaGreca chose to purchase her property. Further, as evidenced by the videotape, noise could be heard from overhead airplanes as well as highway noise from nearby Route 128.

The off-street parking requirements of Section 7.2 require 83 parking spaces but the proposed improvements to the locus will provide 89 spaces. The proposed project also complies with vehicular access requirements set forth in Section 7.3 of the by-law. There is sufficient off-street parking spaces for vehicles of customers, employees and others accessing the establishment.

---

[3]In her testimony, LaGreca stated that if her property had been abutting a truck terminal, she would not have purchased it. Yet, she did in fact purchase this property abutting various active commercial uses and upon inspection, would have known that a trucking terminal was a permitted use at the site.

The Traffic Report submitted to the Zoning board and reviewed by this Court reflects that the proposed use on the locus will have a negligible impact on the traffic operations in the vicinity given that the proposed plan is for traffic to turn left towards Lynnfield at the intersection of Kimball Lane and Salem Street.

The proposed plan also makes adequate provisions consistent with local and state laws and codes relating to fire suppression within the building and other structures.

As to the eleven requirements of Section 7.4, "Site Plan Approval", the site plan approved by the Zoning Board meets and satisfies all of the applicable requirements. On January 25, 1995, the ZBA received a recommendation for approval by the Planning Board.

Although there does not appear to have any real dispute on this point presented by evidence from LaGreca, the Court accepts the Engineering Report of Hayes Engineering, dated April 6, 1999 which addresses proposed methods for disposal of sewage, refuse and other waste resulting from the use permitted on the site. A review of that report supports this Court's finding that the permitted use and methods of drainage of surface water have been designed in an adequate manner. Similarly, provisions for off-site loading and unloading of vehicles, with their products, goods and equipment incidental to this business are adequately addressed.

Lastly, the site and proposed project received a final approval as to wetland and conservation issues by the Massachusetts Department of Environmental Protection.

As to the issue of wetlands, the paved area within the Wetland Buffer Zone, constitutes a driveway. The plan proposes a 40 foot wide access strip running the entire length of the western portion of the property. It ends where another lot, owned by McCarthy begins, thus the two are connected. Approximately a third of the width of this proposed way is within the 50 foot Wetland Buffer Zone. This Court rejects the testimony of Forest Lindwall who testified to the

effect that this strip is a roadway and thus not a permitted use.[4] Rather, this Court accepts the testimony of Peter Ogren, a registered Professional Engineer, who has opined that this driveway is a permitted use under the Wetland ByLaw.[5] This Court found Peter Ogren's testimony opining that the proposed plan of the defendant complied with all local and state laws to be persuasive and compelling. Although this driveway is bigger than that of a residential driveway, which as plaintiff suggests, usually involves a small paved area leading up to a house, the fact is that this is not a residence. In the context of a commercial area, a large, lengthy driveway, which intersects with another way, does not render it a roadway rather than a driveway.    Section 9.2.4 permits driveways as accessory uses and there is no evidence that this will be used for any other purpose for moving vehicles through, even if it requires a larger area due to difficulty turning large trucks.

III.

### Rulings of Law

#### The Plaintiff Has Standing as an Aggrieved Person

As an abutter to the site, the plaintiff, Robin LaGreca, is presumed to be aggrieved and thus has standing to pursue to this action under G.L. c. 40A, Section 17; Marshalian v. Zoning Board of Appeals of Newburyport, 421 Mass. 719, 723 (1996). There does not appear to be any dispute on this point so this Court will not elaborate.

---

[4] Mr. Lindwall is not a professional registered engineer although he has appeared before numerous municipal zoning boards throughout New England and offered his views on various zoning issues.

[5] Mr. Ogren is a registered professional in Massachusetts and two other states; he is also a registered land surveyor;   he has over forty years of experience in this area; Mr. Ogren has been involved in site work at most of the commercial sites in Lynnfield in the last thirty years.   He and his company worked on the subdivision plan which ultimately created Bluejay Road.   Mr. Ogren has extensive knowledge and expertise in the issues raised here including wetlands and riverfront issues as well as all zoning matters.

Review of Special Permit.    In reviewing the Decision of the Board of Appeals, this Court considers the entire matter de novo in addressing the legal validity of the decision. Josephs v. Board of Appeals of Brookline, 362 Mass. 290 (1972). The Court attaches no special weight to the Zoning Board's factual findings or legal conclusions.  Fitchburg Housing Authority v. Board of Zoning Appeals of Fitchburg, 380 Mass. 869, 871 (1980).

The burden of proof is on the party seeking to establish the validity of the special permit. Kirkwood v. Board of Appeals of Rockport, 17 Mass. App. Ct, 423 (1984).  A decision of the Zoning Board of Appeals must be annulled if it is based on legally untenable grounds, is unreasonable, whimsical, capricious or arbitrary. MacGibbon v. Board of Appeals of Duxbury, 356 Mass. 635, 639 (1970).   In determining whether any legal error has been committed this court must determine the content and meaning of the statutes and zoning by laws at issue to ascertain whether or not the zoning board has applied the proper criteria and standards.   If such criteria and standards have been applied, the next question is whether on the basis of facts found by this Court, the board has granted the application using the criteria and standards in a manner which is not "unreasonable, whimsical, capricious or arbitrary." Britton v. Zoning Board of Appeals of Gloucester, 59 Mass. App. Ct. 68, 73 (2003).

A review of the facts together with the standards and criteria applied by the Zoning Board makes clear that the correct standard was used and the decision was not unreasonable, whimsical, capricious or arbitrary.    Specifically, it is clear that portions of areas of the site are designated as Wetland Buffer Zones and the proposed uses will involve those areas.   However, the proposed way is a specifically allowed use.   Site plan review that is attached to the issuance of a building permit for uses allowed as of right only involves regulation of use, not outright prohibition; Thus the scope of review is limited to imposing reasonable terms and conditions on the proposed

use. Zoning Board of Appeals of Charleton, SCIT, Inc. v. Planning Board of Braintree, 19 Mass.

App. 101 (1984)    Section 9.2.4(1) of the zoning by law of the Town of Lynnfield specifically

permits construction and maintenance of "utility trenches, driveways, landscaping, accessory.

building foundations..." within the fifty foot wetlands buffer zone. This Court disagrees with the

plaintiff's argument that the 40 foot wide access strip is not a driveway but is in fact a road not

permitted by Section 9.2.1. The plaintiff argues that one must first look to the general intent of

the bylaw and this Court agrees.  However, there is nothing in the facts of the this case which

would render the proposed use contrary to the general intent.   In fact, the evidence was to the

contrary: that is that the defendant has taken steps to ensure proper drainage and safety of water

supply.[6]

While there is no definition of driveway or roadway in the zoning bylaws, this Court can and

does construe this in its common sense meaning.[7]    The plaintiff would limit its meaning to the

type of driveway one sees in a residential setting:  a small paved way leading up to a house,

garage, etc.   In Section 2.11 of the bylaw, there is a definition of street.[8]   The plaintiff argues

_____

[6]The purpose of the Wetland Bylaw is to ensure that "lands in the Town of Lynnfield which are defined as a Wetland Buffer Zone shall not be used for residence nor [sic] other purposes in such a manner as to endanger the health and safety of the citizens of Lynnfield, public and/or private water supplies and ground water supplies, to prevent pollution and to preserve wetlands." Section 9.2.1

[8]Section 2.11 defines Street as "A way which is over twenty four (24) feet in right-of-way width which is dedicated or devoted to public use if legal mapping or by any other lawful procedure.  A "Street" includes, 1) all public ways, 2) a way which the town clerk certifies is maintained and used as a public way, 3) a way shown on a plan approved and endorsed in accordance with the Rules and Regulation Governing Subdivision of Land in Lynnfield, Massachusetts, or 4) a way having in the opinion of the Lynnfield Planning Board sufficient paved width, suitable grades and adequate construction to provide for the needs of vehicular traffic in relation to the proposed uses of the land abutting thereon or served thereby and for the installation of municipal services to serve such land and the buildings erected or to be erected thereon.

that since Section 2.11 references a "way which is over twenty four (24) feet" in its definition of "street", this must mean that any way which is 40 feet must certainly not be a driveway.    This reliance on the beginning references to twenty four feet in Section 2.11 is misplaced since the remainder of the definition clearly has no application here.    Therefore, the question is what is a driveway.    This Court's view is that plaintiff's suggested definition (which would virtually exclude anything but residential driveways) is too constricting.  Certainly a driveway in a shopping mall, industrial or office park, football stadium or other large commercial enterprise can and no doubt usually is, as a matter of commonsense, larger and longer than what one sees in front of or beside a residential home.    Despite the strained reading the plaintiff urges on the Court, the language is plain and simple.  Section 9.2.4 considers driveways to be a permitted accessory use under Section 9.2.4 and this is a driveway.    The fact that the defendant may have granted an easement over this way does nothing to alter this finding.    All portions of the site that include paved areas intended for travel by vehicles are driveways and are properly sized as driveways for the intended use as a trucking terminal.  As such they are exempt from the fifty (50) foot buffer zoning requirement of Section 9.2,4(I) of by the zoning by law.  Adopting this plain and simple interpretation does not, in this Court's view, "eviscerate the essential purpose of the Wetland Buffer Zone" as plaintiff argues.

As to the sufficiency of the findings, this Court finds that they are adequate.  This Court is mindful that as with virtually all municipalities, this decision was no doubt the product of the efforts of a part time volunteer board (not necessarily comprised of zoning lawyers). The decision passes legal muster.

Further, the plaintiff has argued that there is something legally wrong about the Board giving the plaintiff the opportunity to accept what this Court views as a settlement prior to its

CM  4491

making a final decision.   This Court can find nothing about improper about the Board giving the plaintiff the opportunity to take advantage of a settlement proposal proferred by the defendant in lieu of proceeding with the case.

Finally, while the bulk of plaintiff's legal complaint against the proposed use has related to the Wetlands bylaws and claimed violations thereof, no evidence whatsoever was introduced by plaintiff as to what harm she would suffer from such claimed violations.   Rather, to the extent the plaintiff has complaints, they pertain to light and noise.   These are not of a scope, intensity, duration or intensity to warrant a finding of any articulable harm to the plaintiff.

It is clear to this Court that this decision was legally sound and in no way arbitrary, capricious or otherwise unlawful.   The site plan approved by the Zoning Board of Appeals satisfies the storm-water management requirement of the By Law regarding runoff as evidenced by the vote of the Board of Appeals and ultimately by approval by the Massachusetts Department of Environmental Protection.   In fact, it is clear to the Court that the Zoning Board paid particular attention to the concerns of the abutters in crafting reasonable restrictions on the proposed use.

The Town of Lynnfield is a municipality with many residential neighborhoods as well as being home to a number of vibrant businesses providing an advantageous commercial base to the Town.   The practical effect of this mixed use community is that residential zones can and do abut commercial zones, with the challenge always being to ensure that the bylaws are applied to protect everyone's interests.   The Town has an obligation to apply its bylaws to enforce and protect the rights not only of the public at large but of all property owners.   This does not just mean residential property owners.   The defendant is a property owner and has every right to use his property in a manner consistent with the Town's bylaws.   The defendant has met his burden

of proof in establishing that this is a permitted use and that sixteen reasonable conditions have been attached to protect the public. In sum, the decision has properly addressed all of the issues required under the Zoning By Laws consistent with the law and those by-laws as well as the overall goal of those by-laws.

## ORDER

It is ORDERED that the decision of the Zoning Board of Appeals is AFFIRMED.

Nancy Staffier Holtz
Associate Justice

April 27, 2005

CM 4493